IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**
JUN 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GERALD L. MARSHALL, II
    Plaintiff,

v.                             Civil No. 06-2136(HHK)

BUREAU OF PRISONS, et al.,
    Defendants.


PLAINTIFF'S MOTION SEEKING LEAVE OF FILE
A SUR-REPLY TO THE DEFENDANT'S REPLY
IN SUPPORT OF MOTION TO DISMISS

    **Comes now**, the Plaintiff, Gerald L. Marshall, II., moving **pro se**, and hereby respectfully requests the Court to grant this instant motion seeking leave to file a sur-reply to the Defendant's reply in support of motion to dismiss. In support of this motion, Plaintiff states the following:


    Granting this motion will give Plaintiff the opportunity to rebut for the first time the Defendants' reply, which raises a **new** argument regarding "a contractual obligation between the Board of Trustees of Roanoke Chowan Community College in Ahoeski [sic], North Carolina and the District of Columbia." **See** the Defendants'

- 1 -

reply at page **3** paragraph **1.** In addition, the Defendants attach for the <u>first</u> <u>time</u> an ostensibly authentic document generated by a word processor program and characterized as a "Work Force and Community Training for Incarcerated Youth Offenders Program Overview". <u>See</u> <u>id.</u> The Defendants are also raising a new argument to the Court which appears to be based on a "rational basis test". <u>See</u> the Defendants' reply at page **3**. The Defendants have, for the first time, revealed their position regarding 28 C.F.R. § 541.12 and D.C. Code § 24-101(b).

Plaintiff asserts that the Defendants' reply is saturated with novel arguments that are being **<u>presented to this Court for the first time</u>**. Plaintiff asserts that the arguments are new to him and this court, and that at this juncture, he has not been provided with the opportunity to address the new arguments raised by the Defendants. Courts routinely grant motions for leave to file a sur-reply when a party such as the Plaintiff is "'unable to contest matters presented to the Court for the first time'." <u>Ben-Kotel v. Howard</u> <u>University</u>, 319 F.3d 532, 536 (D.C.Cir. 2003) (quoting <u>Lewis v. Rumsfeld</u>, 154 F.Supp.2d 56, 61 (D.D.C. 2001)); <u>U.S. v. Baroid Corp.</u>, 346 F.Supp.2d 138, 143 (D.D.C. 2004); <u>Robinson v. The Detroit News,</u> <u>Inc.</u>, 211 F.Supp.2d 101, 112 (D.D.C. 2002) ("[t]he standard for granting leave to file a sur-reply is whether the party making the motion would be unable to contest matters presented to the Court for the first time in the opposing party's reply"). <u>Flynn v. Veazey</u>

Const. Corp., 310 F.Supp.2d 186, 189 (D.D.C. 2004).

Unequivocally, the arguments raised by the Defendants' in their reply in support of motion to dismiss **were not** incorporated into the Defendants' May 3, 2007 motion to dismiss. Plaintiff asserts that the Court should grant this motion authorizing the accompanying sur-reply. See Exhibit One. McNamara v. National Credit Union Ass'n, 264 F.Supp.2d 1,4 (D.D.C. 2002) (courts are to grant pro se litigants more latitude in procedural matters); Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Respectfully Submitted,

June 12, 2007

*Gerald L. Marshall, II*
Gerald L. Marshall, II

- 3 -

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


GERALD L. MARSHALL, II
    Plaintiff,

v.                                            Civil No. 06-2136(HHK)

BUREAU OF PRISONS, et al.,


PLAINTFF'S SUR-REPLY TO THE DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS


    **Comes now**, the Plaintiff, Gerald L. Marshall, II., moving **pro se**, and hereby respectfully requests this Court to deny the Defendants' motion to dismiss. In support of this sur-reply, Plaintiff asserts the following:


## ARGUMENT
I.  Plaintiff Has The Regulatory Right To Participate In Education And Vocational Training.

    The Defendants are, for the first time, displaying their position regarding 28 C.F.R. § 541.12 The Defendants are misunderstanding the significance of that regulation by stating that "[t]he regulation stresses that inmates have a 'right to participate in edu-

- 1 -                                      EXHIBIT ONE

cation and vocational training...as far as resources are available...". Then the Defendants claim that "[t]he list of inmates rights and responsibilities is an informal vehicle to give inmates a general overview of BOP rules."[1] See the Defendants' reply at page 1. The Defendants' position is without merit. The Defendants have failed to explain away the fact that the BOP signed a contract with GEO Group, Inc., in 2000, guaranteeing them $91,890,622.95 for the first three years of the operation of Rivers Correctional Institution (hereinafter "RCI") and an unspecified amount for the years thereafter. See Plaintiff's complaint at Exhibit Eight, contract award page. There is no doubt whatsoever that the financial resources are available to provide education and training to the inmate population at RCI, which is composed primarily of D.C. inmates (all of whom are conferred obvious benefits by D.C. Code § 24-101(b)). However, the resources have not been allotted for the purpose of program opportunities. Essentially, there are no programs available to Plaintiff, which blocks his "right to participate in education and vocational training" at RCI. See 28 C.F.R. § 541.12(10).

---

[1] Suggesting that "[t]he list of inmate rights...is an informal vehicle", and implying that those "rights" are not really rights is nonsense. Those "rights", as laid out in 28 C.F.R. § 541.12, include "the right to expect that as a human being, you will be treated respectfully, impartially, and fairly", "the right to freedom of religious affiliation", "the right to health care", "the right to legal counsel", and "the right to participate in education, vocational training and employment". Do the Defendants really anticipate depriving any inmates of the rights to religious affiliation, health care, and/or legal counsel? Of course not! And regardless, "Accardi [v. Shaughnessy, 347 U.S. 260 (1954)] has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." Battle v. F.A.A., 393 F.3d 1330, 1336 (D.C. Cir. 2005). Simply put, the right most certainly exists! Citing cases that were decided nine (9) to twenty-four (24) years before 28 C.F.R. § 541.12 was even promulgated is a cheap attempt at suggesting otherwise. See Defendants' reply at page 4.

Notably, and in stark contrast with the Defendants' statement that the regulation "is an informal vehicle to give inmates a general overview of the BOP rules", this statement is wholly unsupported. 28 C.F.R. § 541.12 was duly promulgated by the BOP. [Since when is a **regulation**, promulgated by a federal agency and published in the Federal Register pursuant to the law-making procedures established by Congress, a mere "informal vehicle"?!] See chiefly 28 C.F.R. § 0.96(o) (Delegations). Chrysler Corp. v. Brown, 441 U.S. 281, 300-05 (1979). 28 C.F.R. § 541.12 gives Plaintiff a **formal** "right" to participate in "education and vocational training". See Plaintiff's response in opposition to the Defendants' motion to dismiss at pages 2 through 5. Currently, Plaintiff is doing **idle time**, with a projected release date of May 11, 2020. Plaintiff has been incarcerated since October 1988. Plaintiff is being warehoused at RCI without any rehabilitative opportunities in the realm of "education" and "training" as required by D.C. Code § 24-101(b) (2001). To not have any education and vocational opportunities available to Plaintiff is (1) counter to **the law** (specifically D.C. Code § 24-101(b)); and (2) counter to the vested interest of society, which is to have Plaintiff become a contributing member of society prior to his return to the community. "Indeed, the public has a strong interest in seeing that incarcerated individuals are capable of becoming contributing members of society upon their release." Tanner v. Federal Bureau of Prisons, 433 F.Supp.2d 117, 126 (D.D.C. 2006); Morales Feliciano v. Romero Barcelo, 672 F.Supp. 591, 606-07 (D. Puerto

Rico 1986); <u>Cummings v. Regan</u>, 45 A.D.2d 222, 357 N.Y.S.2d 260, 263 (N.Y.App.Div. 1974) (stating that the "interest of society is rehabilitation" of prisoners).

In order for Plaintiff to reduce the duration of his sentence, he must complete an "academic or vocational program" which will reduce the duration of his sentence by "no less than <u>3</u> days a month and not more than <u>5</u> days a month". D.C. Code § 24-221.01(a) (2001). "'Once state law defines the substance, constitutional law establishes the minimum procedures'." <u>Duckett v. Quick</u>, 282 F.3d 844, 848 (D.C. Cir. 2002) (quoting <u>Archie v. City of Racine</u>, 847 F.2d 1211, 1217 (7th Cir. 1988)). The Defendants, throughout this civil action, have been completely silent with respect to the extremely relevant Congressionally-enacted statute set forth at D.C. Code § 24-221.01(a) (Educational good time). The Defendants are well aware that § 24-221.01(a) creates Plaintiff's liberty interest in having the duration of his sentence reduced. Because there are <u>no</u> "education" and "training" opportunities (<u>see</u> D.C. Code § 24-101(b) (2001)) available to Plaintiff at RCI, he is currently being deprived of his regulatory "right" to "participate in education and vocational training" (<u>see</u> 28 C.F.R. § 541.12(10)). Thus, the Defendants are depriving Plaintiff of his right to reduce the duration of his sentence as prescribed in D.C. Code § 24-221.01(a) (2001). "...[S]tate statutes or policies can create a prisoner's liberty interest in being free from an 'atypical, significant deprivation'

or a deprivation that 'will inevitably affect the duration of his sentence'." Tanner v. Federal Bureau of Prisons, 433 F.Supp.2d 117, 123 (D.D.C. 2006) (quoting Sandin v. Conner, 515 U.S. 472, 486-87 (1995)); Doe By Fein v. District of Columbia, 93 F.3d 861, 868 (D.C. Cir. 1996) ("It is clear that state law which generates a legitimate claim of entitlement can create an interest the deprivation of which triggers application of the Due Process clause"); Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644, 647 (D.D.C. 1987) ("A protectable liberty interest may arise from two sources—the Due Process Clause itself or the laws of the states").

To reiterate, there are <u>no</u> education or training programs available to Plaintiff at RCI. The Defendants have offered this Court absolutely <u>no</u> evidence to the contrary. It is undisputed that "[c]urrently RCI has one accredited program and that is the HVAC program. The Roanoke Chowan Community College has certified the program." See attachment one, 12-6-06 response from the Assistant Warden of Programs ("AW-P"). The AW-P's response corroborates Plaintiff's assertion that there are no programs available to him at RCI. D.C. Code § 24-101(b) requires the Defendants to provide Plaintiff with "education" and "training". See id. Because there are no programs available to Plaintiff at RCI, he is currently being deprived of his "right" to participate in "education and training" within the meaning of 28 C.F.R. § 28 C.F.R. § 541.12(10). In addition, because there are no program opportunities available to Plain-

tiff at RCI, he is currently being deprived of his right to reduce the duration of his sentence in accordance with D.C. Code § 24-221.01 (a). See Sandin v. Conner, 515 U.S. 472, 486-87 (1995) (constitutional protection s do arise when a prisoner has a recognized liberty interest created by state statutes and policies). See also Plaintiff's opposition to the Defendants' motion to dismiss at page 7.

II. Plaintiff Has Established An Equal Protection Violation.

On page 3 of the Defendants' Reply, they claim for the first time that "[t]he HVAC program was not created by the BOP, it is part of a contractual obligation between the Board of Trustees of Roanoke Chowan Community College in Ahoeski [sic], North Carolina and the District of Columbia." This statement misses its mark. The District of Columbia has provided a certain class of D.C. Code offenders with the very education and vocational training that the Defendants are required to provide to all D.C. Code offenders housed at RCI. See D.C. Code § 24-101(b): "...the Bureau of Prisons shall be responsible for the...education...and training of [Plaintiff]." The Defendants are depriving Plaintiff of the benefits of D.C. Code § 24-101(b). "The Equal Protection Clause...demands that the government 'apply its laws in a rational and nonarbitrary way; the unequal application of a law, fair on its face, may act as a denial of equal protection'." Pryor-El v. Kelly, 892 F.Supp. 261, 269 (D.D.C. 1995) (quoting Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644,

- 6 -

650 (D.C. Cir. 1987) (citing <u>Yick Wo v. Hopkins</u>, 118 U.S. 335, 373-74 (1886); <u>Zeigler v. Jackson</u>, 638 F.2d 776, 779 (5th Cir. 1981))).

Notably, on page **3** of the Defendants' reply, they state that "[t]he BOP is responsible for <u>oversight</u> and <u>implementation</u> of the program as part of its custodial obligations of D.C. inmates". If the BOP is responsible for the oversight and implementation of the HVAC program, then Plaintiff should be provided with the same "right" to participate in the "vocational training" like the younger class of D.C. Code offenders. <u>See</u> 28 C.F.R. § 541.12(10). The BOP here concedes that they do have custodial obligations towards D.C. inmates; however, they are circumventing those same "custodial obligations" to Plaintiff by failing to provide him with <u>any</u> program opportunities as required by D.C. Code § 24-101(b) (the statute that creates those custodial obligations: care, subsistence, education, treatment, and training!). [Either the BOP has custodial obligations or they don't; Plaintiff asserts that they do, and Defendants seem unsure one way or the other.] <u>See</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982) ("The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike'") (quoting <u>F.S. Royster Guano Co. v. Virginia</u>, 253 U.S. 412, 415 (1920)). <u>See</u> Plaintiff's opposition to the Defendants' motion to dismiss at pages **9** through **13**.

On page **2** of the Defendants' reply, they candidly concede that they are "responsible" for the "implementation" of programs as part

- 7 -

of "its custodial obligations of D.C. inmates". See id. Cf. D.C. Code § 24-101(b). The Defendants then go on to argue that "the government has concluded, on a rational basis, that the disparate treatment of plaintiff is based on the desire to assist youth offenders". Id. at page 3 of the Defendants' reply. Apparently, the Defendants are now construing Plaintff's complaint into an issue based on "age". As the Defendants have stated, "The HVAC program was not created by the BOP." This statement is irrelevant with respect to Plaintiff's complaint, that there are no programs available to him at RCI. See Plaintiff's complaint at paragraphs 10, 12, 15, 17, 25 and 29.

In enacting D.C. Code § 24-101(b), Congress did not charge the District of Columbia with the responsibility of providing Plaintiff with program opportunities. Unequivocally, Congress charged the BOP with the absolute "responsibility" to ensure that Plaintiff receives "education" and "training" opportunities. If the District of Columbia did not fund the HVAC program, the D.C. youth offenders would also be deprived by the BOP of program opportunities. The Defendants have attached to their reply an ostensibly authentic document generated by a word processor program and characterized as a "Work Force and Community Training for Incarcerated Youth Offenders Program Overview". Attaching this document to their reply is merely a failed attempt at explaining away their violation of the Congressional mandate to provide Plaintiff with program opportunities. Currently,

- 8 -

there is only one class of D.C. Code offenders reaping the benefits of 28 C.F.R. § 541.12(10) and D.C. Code § 24-101(b). Plaintiff is currently being deprived of the same benefits prescribed in the noted laws. The Defendants are currently applying 28 C.F.R. § 541.12 and D.C. Code § 24-101(b) in an unequal manner. Thus, Plaintiff is currently being denied the Equal Protection of the D.C. laws. Importantly, this case omits any age discrimination issue, and therefore Plaintiff does not have to overcome the rational-basis review. See Plaintiff's respose in opposition to the Defendants' motion to dismiss at pages 9 through 13.

### III. Plaintiff Asserts A Valid Administrative Procedures Act Claim.

Throughout this entire civil action, Plaintiff has maintained that the Defendants have a statutory duty to ensure that the Plaintiff and similarly situated D.C. Code offenders receive "education" and "training", which would satisfy the Congressional mandate set forth in D.C. Code § 24-101(b). The Defendants have conceded to Plaintiff's assertion by stating, "[i]t is true that D.C. Code § 24-101(b) does grant the BOP authority to oversee D.C. felons and part of this oversight includes the provision of education and training opportunities." See the Defendants' reply at page 4. This statement is in stark contrast with their argument asserted in the May 3, 2007 memorandum in support of Defendants' motion to dismiss at pages 7 through 8.

- 9 -

In addition, the Defendants now claim for the first time that "...the language in the statute does not specify any detailed education or training program...". <u>See</u> the Defendants' reply at pages <u>4</u> and <u>5</u>  Webster's Third New International Dictionary (2002) defines the term "education" as:

> "a formal course of instruction or training offered by an institution primarily designed to provide an education—often used with a modifier specifying the type or field of instruction or training."

<u>Id.</u> at page 723.  The same dictionary defines the term "training" as:

> "development of a particular skill or group of skills: instruction in an art, profession, or occupation".

<u>Id.</u> at page 2424.

Plaintiff asserts that the foregoing definitions helps establish that the terms "education" and "training" are self-explanatory, which simply means that the Defendants are required to provide <u>some</u> <u>form</u> or <u>forms</u> of program opportunities to Plaintiff.  Similarly, Defendants <u>could</u> dubiously argue that the language in D.C. Code § 24-101(b) doesn't specify any details with respect to "subsistence"; yet the Defendants still manage to obey the statute by providing food and shelter to the inmates—<u>all</u> of the inmates—at RCI!  (<u>See</u> <u>supra</u> at page <u>2</u>, n. 1.)  The Defendants attempt to minimize the force of D.C. Code § 24-101(b) by stating that it "merely outlines the

- 10 -

fact that training and educational opportunities are to be made available to inmates." [Presumably, "inmates" means more than just one.] See the Defendants' reply at page **4**. Plaintiff has maintained that there are currently **no** education or training opportunities available to him at RCI. The Defendants have yet to refute Plaintiff's contention regarding the absence of program opportunities at RCI. Nor have the Defendants offered this Court any evidence that would establish that there at least **some** program opportunities available to Plaintiff and similarly-situated D.C. Code offenders. D.C. Code § 24-101(b) requires the Defendants to take a certain course of action, and at this juncture, the Defendants' **inaction** is "otherwise not in accordance with" D.C. Code § 24-101(b). 5 U.S.C. § 706(2)(A). Mount Royal Joint Venture v. Kempthorne, 477 F.3d 745, 753 (D.C. Cir. 2007). See Title 5 U.S.C. § 702. When a statue says that an agency **shall** do something, a defense consisting of "the language in the statue doesn't specify details" is hardly sufficient to justify **doing nothing**. This is the summary of Defendants' defense of their violation of the Administrative Procedure Act; see pages **3-4** of their reply.


Plaintiff has been warehoused at RCI since September 12, 2002. RCI offered Plaintiff **only one single** program, which started on December 26, 2002 and ended on August 22, 2003.


- 11 -

at Exhibit One, page **2**. Thus, the Defendants' claim that "[s]everal of these opportunities have been made available to plaintiff, as he acknowleged in his complaint," is a ridiculous misinterpretation on their part; <u>see</u> the Defendants' reply at page **4**. Plaintiff noted on page **14** of his complaint, to which the Defendants ostensibly refer, that "he has acquired a magnitude of program achievements"; all of those except **one** were either paid for by Plaintiff or provided at institutions **other than** RCI. That one program that RCI offered Plaintiff in 2003 does not explain away the fact that currently neither the BOP nor RCI has provided Plaintiff with program opportunities (note the plural!). <u>See</u> <u>chiefly</u>, Plaintiff's complaint memorandum at paragraphs **25** **26**, **27**, **33**, **36**, and **37**.

Plaintiff has a projected release date of March 5, 2011. Plaintiff currently has several Education Good Time ("EGT") days available to him. <u>See</u> Plaintiff's complaint at paragraph **29**. However, Plaintiff is currently unable to acquire the EGT because there are currently **no** program opportunities available to him at this privately-operated facility. Thus, Plaintiff is currently being deprived of the right to reduce the duration of his sentence. The Defendants are in statutory violation of the unambiguous Congressional mandate prescribed in D.C. Code § 24-101(b), which requires the Defendants to provide Plaintiff with "education" and "training". <u>See</u> <u>Mount Royal Joint Venture v. Kempthorne</u>, 477 F.3d 745, 754 (D.C. Cir. 2007); <u>Jasperson v. Federal Bureau of Prisons</u>, 460 F.Supp.2d 76, 88-89

(D.D.C. 2006); **Echostar Satellite L.L.C. v. F.C.C.**, 457 F.3d 31, 35 (D.C. Cir. 2006), citing to the two-step analysis announced by the Supreme Court in **Chevron USA Inc. v. Natural Resources Defense Council**, 467 U.S. 837, 842-43 (1984).

**On page 5** of the Defendants' reply, they cited to several cases outside of the D.C. Circuit with respect to training opportunities, etc. Notably, all of those cases predate the promulgation of 28 C.F.R. § 541.12 (1998) and the enactment of D.C. Code § 24-101(b) (2001), by years or even decades. Thus, the cases cited by the Defendants' are currently failing to provide Plaintiff with education and training opportunities, which is a statutory violation of D.C. Code § 24-101(b) (2001). **See Leis v. Flynt**, 439 U.S. 438, 442 (1979) (A" claim of entitlement..., to be enforceable, must be derived from statue or legal rule or through a mutually explicit understanding"). **See also**, Plaintiff's response in opposition to the Defendants' motion to dismiss at pages **13** and **18**.

## CONCLUSION

Wherefore, Plaintiff, Gerald L. Marshall, II., **pro se**, prays that this Court will, in the best interest of fairness and justice, deny the Defendants' motion to dismiss and their reply in support of

motion to dismiss, and grant the injunctive and declaratory relief that Plaintiff is seeking.

Date: June 12, 2007

Respectfully Submitted,

/s/ Gerald L. Marshall, II

Gerald L. Marshall, II
Fed. Reg. No. #08573-007
Rivers Correctional Inst.
P.O. Box 630 / Unit C-4
Winton, N.C. 27986-0630


CERTIFICATE OF SERVICE

This is to certify that I have on this **12th** day of June 2007 served a copy of the foregoing upon the below-listed party by placing the same in the Rivers Correctional Institution prison mailbox, addressed as follows:

Quan K. Luong
Assistant United States Attorney
555 Fourth Street N.W.
Washington, D.C. 20530

/s/ Gerald. L. Marshall, II
Pro se

- 14 -

Rivers Correctional Institution

Date:      December 5, 2006

To:

This is in response to your inmate request to staff dated November 28, 2006 in which you ask for the types of accreditation programs provided by RCI and who has certified the programs.

Currently RCI has one accredited program and that is the HVAC program. The Roanoke Chowan Community College has certified the program.

Should you have any further questions regarding this issue, please address them to your Unit Team.

12-6-06
Date

David Farmer, AWP

ATTACHMENT ONE