IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


GERALD L. MARSHALL, II
       Plaintiff,


v.                                              Civil No. <u>06-2136(HHK)</u>

BUREAU OF PRISONS, <u>et al.</u>,


PLAINTFF'S SUR-REPLY TO THE DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS


     **Comes now**, the Plaintiff, Gerald L. Marshall, II., moving <u>**pro se**</u>, and hereby respectfully requests this Court to deny the Defendants' motion to dismiss. In support of this sur-reply, Plaintiff asserts the following:


<u>ARGUMENT</u>

I.  **Plaintiff Has The Regulatory Right To Participate In Education And Vocational Training.**

    The Defendants are, for the first time, displaying their position regarding 28 C.F.R. § 541.12 The Defendants are mis-understanding the significance of that regulation by stating that "[t]he regulation stresses that inmates have a 'right to participate in edu-

- 1 -                          <u>EXHIBIT ONE</u>

cation and vocational training...as far as resources are available...". Then the Defendants claim that "[t]he list of inmates rights and responsibilities is an informal vehicle to give inmates a general overview of BOP rules."[1]  See the Defendants' reply at page 1.  The Defendants' position is without merit.  The Defendants have failed to explain away the fact that the BOP signed a contract with GEO Group, Inc., in 2000, guaranteeing them $91,890,622.95 for the first three years of the operation of Rivers Correctional Institution (hereinafter "RCI") and an unspecified amount for the years thereafter.  See Plaintiff's complaint at Exhibit Eight, contract award page.  There is no doubt whatsoever that the financial resources are available to provide education and training to the inmate population at RCI, which is composed primarily of D.C. inmates (all of whom are conferred obvious benefits by D.C. Code § 24-101(b)).  However, the resources have not been allotted for the purpose of program opportunities.  Essentially, there are no programs available to Plaintiff, which blocks his "right to participate in education and vocational training" at RCI.  See 28 C.F.R. § 541.12(10).

---

[1]  Suggesting that "[t]he list of inmate rights...is an informal vehicle", and implying that those "rights" are not really rights is nonsense.  Those "rights", as laid out in 28 C.F.R. § 541.12, include "the right to expect that as a human being, you will be treated respectfully, impartially, and fairly", "the right to freedom of religious affiliation", "the right to health care", "the right to legal counsel", and "the right to participate in education, vocational training and employment".  Do the Defendants really anticipate depriving any inmates of the rights to religious affiliation, health care, and/or legal counsel?  Of course not!  And regardless, "Accardi [v. Shaughnessy, 347 U.S. 260 (1954)] has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others."  Battle v. F.A.A., 393 F.3d 1330, 1336 (D.C. Cir. 2005).  Simply put, the right most certainly exists!  Citing cases that were decided nine (9) to twenty-four (24) years before 28 C.F.R. § 541.12 was even promulgated is a cheap attempt at suggesting otherwise.  See Defendants' reply at page 4.

Notably, and in stark contrast with the Defendants' statement
that the regulation "is an informal vehicle to give inmates a general
overview of the BOP rules", this statement is wholly unsupported.
28 C.F.R. § 541.12 was duly promulgated by the BOP.  [Since when is
a **regulation**, promulgated by a federal agency and published in the
Federal Register pursuant to the law-making procedures established
by Congress, a mere "informal vehicle"?!]  See chiefly 28 C.F.R.
§ 0.96(o) (Delegations).  Chrysler Corp. v. Brown, 441 U.S. 281,
300-05 (1979).  28 C.F.R. § 541.12 gives Plaintiff a **formal** "right"
to participate in "education and vocational training".  See Plain-
tiff's response in opposition to the Defendants' motion to dismiss
at pages 2 through 5.  Currently, Plaintiff is doing **idle time**, with
a projected release date of  May 11, 2020.  Plaintiff has been in-
carcerated since  October 1988.  Plaintiff is being warehoused at
RCI without any rehabilitative opportunities in the realm of "educa-
tion" and "training" as required by D.C. Code § 24-101(b) (2001).
To not have any education and vocational opportunities available to
Plaintiff is (1) counter to the law (specifically D.C. Code § 24-
101(b)); and (2) counter to the vested interest of society, which is to
have Plaintiff become a contributing member of society prior to his
return to the community.  "Indeed, the public has a strong interest
in seeing that incarcerated individuals are capable of becoming con-
tributing members of society upon their release." Tanner v. Fede-
ral Bureau of Prisons, 433 F.Supp.2d 117, 126 (D.D.C. 2006); Mora-
les Feliciano v. Romero Barcelo, 672 F.Supp. 591, 606-07 (D. Puerto

- 3 -

Rico 1986); <u>Cummings v. Regan</u>, 45 A.D.2d 222, 357 N.Y.S.2d 260, 263 (N.Y.App.Div. 1974) (stating that the "interest of society is reha-bilitation" of prisoners).

In order for Plaintiff to reduce the duration of his sentence, he must complete an "academic or vocational program" which will re-duce the duration of his sentence by "no less than <u>3</u> days a month and not more than <u>5</u> days a month". D.C. Code § 24-221.01(a) (2001). "'Once state law defines the substance, constitutional law estab-lishes the minimum procedures'." <u>Duckett v. Quick</u>, 282 F.3d 844, 848 (D.C. Cir. 2002) (quoting <u>Archie v. City of Racine</u>, 847 F.2d 1211, 1217 (7th Cir. 1988)). The Defendants, throughout this civil action, have been completely silent with respect to the extremely relevant Congressionally-enacted statute set forth at D.C. Code § 24-221.01(a) (Educational good time). The Defendants are well aware that § 24-221.01(a) creates Plaintiff's liberty interest in having the duration of his sentence reduced. Because there are <u>no</u> "education" and "training" opportunities (<u>see</u> D.C. Code § 24-101(b) (2001)) available to Plaintiff at RCI, he is currently being deprived of his regulatory "right" to "participate in education and vocational training" (<u>see</u> 28 C.F.R. § 541.12(10)). Thus, the De-fendants are depriving Plaintiff of his right to reduce the duration of his sentence as prescribed in D.C. Code § 24-221.01(a) (2001). "...[S]tate statutes or policies can create a prisoner's liberty interest in being free from an 'atypical, significant deprivation'

- 4 -

or a deprivation that 'will inevitably affect the duration of his
sentence'." Tanner v. Federal Bureau of Prisons, 433 F.Supp.2d 117,
123 (D.D.C. 2006) (quoting Sandin v. Conner, 515 U.S. 472, 486-
87 (1995)); Doe By Fein v. District of Columbia, 93 F.3d 861, 868
(D.C. Cir. 1996) ("It is clear that state law which generates a
legitimate claim of entitlement can create an interest the depriva-
tion of which triggers application of the Due Process clause");
Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644, 647
(D.D.C. 1987) ("A protectable liberty interest may arise from two
sources—the Due Process Clause itself or the laws of the states").

To reiterate, there are no education or training programs
available to Plaintiff at RCI. The Defendants have offered this
Court absolutely no evidence to the contrary. It is undisputed
that "[c]urrently RCI has one accredited program and that is the
HVAC program. The Roanoke Chowan Community College has certified
the program." See attachment one, 12-6-06 response from the Assis-
tant Warden of Programs ("AW-P"). The AW-P's response corroborates
Plaintiff's assertion that there are no programs available to him
at RCI. D.C. Code § 24-101(b) requires the Defendants to provide
Plaintiff with "education" and "training". See id. Because there
are no programs available to Plaintiff at RCI, he is currently being
deprived of his "right" to participate in "education and training"
within the meaning of 28 C.F.R. § 28 C.F.R. § 541.12(10). In addi-
tion, because there are no program opportunities available to Plain-

tiff at RCI, he is currently being deprived of his right to reduce the duration of his sentence in accordance with D.C. Code § 24-221.01 (a). See Sandin v. Conner, 515 U.S. 472, 486-87 (1995) (constitutional protection s do arise when a prisoner has a recognized liberty interest created by state statutes and policies). See also Plaintiff's opposition to the Defendants' motion to dismiss at page 7.

## II. Plaintiff Has Established An Equal Protection Violation.

On page 3 of the Defendants' Reply, they claim for the first time that "[t]he HVAC program was not created by the BOP, it is part of a contractual obligation between the Board of Trustees of Roanoke Chowan Community College in Ahoeski [sic], North Carolina and the District of Columbia." This statement misses its mark. The District of Columbia has provided a certain class of D.C. Code offenders with the very education and vocational training that the Defendants are required to provide to all D.C. Code offenders housed at RCI. See D.C. Code § 24-101(b): "...the Bureau of Prisons shall be responsible for the...education...and training of [Plaintiff]." The Defendants are depriving Plaintiff of the benefits of D.C. Code § 24-101(b). "The Equal Protection Clause...demands that the government 'apply its laws in a rational and nonarbitrary way; the unequal application of a law, fair on its face, may act as a denial of equal protection'." Pryor-El v. Kelly, 892 F.Supp. 261, 269 (D.D.C. 1995) (quoting Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644,

- 6 -

650 (D.C. Cir. 1987) (citing <u>Yick Wo v. Hopkins</u>, 118 U.S. 335, 373-74 (1886); <u>Zeigler v. Jackson</u>, 638 F.2d 776, 779 (5th Cir. 1981))).

Notably, on page <u>3</u> of the Defendants' reply, they state that "[t]he BOP is responsible for <u>oversight</u> and <u>implementation</u> of the program as part of its custodial obligations of D.C. inmates". If the BOP is responsible for the oversight and implementation of the HVAC program, then Plaintiff should be provided with the same "right" to participate in the "vocational training" like the younger class of D.C. Code offenders. <u>See</u> 28 C.F.R. § 541.12(10). The BOP here concedes that they do have custodial obligations towards D.C. inmates; however, they are circumventing those same "custodial obligations" to Plaintiff by failing to provide him with <u>any</u> program opportunities as required by D.C. Code § 24-101(b) (the statute that creates those custodial obligations: care, subsistence, education, treatment, and training!). [Either the BOP has custodial obligations or they don't; Plaintiff asserts that they do, and Defendants seem unsure one way or the other.] <u>See</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982) ("The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike'") (quoting <u>F.S. Royster Guano Co. v. Virginia</u>, 253 U.S. 412, 415 (1920)). <u>See</u> Plaintiff's opposition to the Defendants' motion to dismiss at pages <u>9</u> through <u>13</u>.

On page <u>2</u> of the Defendants' reply, they candidly concede that they are "responsible" for the "implementation" of programs as part

of "its custodial obligations of D.C. inmates". See id. Cf. D.C. Code § 24-101(b). The Defendants then go on to argue that "the government has concluded, on a rational basis, that the disparate treatment of plaintiff is based on the desire to assist youth offenders". Id. at page 3 of the Defendants' reply. Apparently, the Defendants are now construing Plaintff's complaint into an issue based on "age". As the Defendants have stated, "The HVAC program was not created by the BOP." This statement is irrelevant with respect to Plaintiff's complaint, that there are no programs available to him at RCI. See Plaintiff's complaint at paragraphs 10, 12, 15, 17, 25 and 29.

   In enacting D.C. Code § 24-101(b), Congress did not charge the District of Columbia with the responsibility of providing Plaintiff with program opportunities. Unequivocally, Congress charged the BOP with the absolute "responsibility" to ensure that Plaintiff receives "education" and "training" opportunities. If the District of Columbia did not fund the HVAC program, the D.C. youth offenders would also be deprived by the BOP of program opportunities. The Defendants have attached to their reply an ostensibly authentic document generated by a word processor program and characterized as a "Work Force and Community Training for Incarcerated Youth Offenders Program Overview". Attaching this document to their reply is merely a failed attempt at explaining away their violation of the Congressional mandate to provide Plaintiff with program opportunities. Currently,

there is only one class of D.C. Code offenders reaping the benefits
of 28 C.F.R. § 541.12(10) and D.C. Code § 24-101(b).  Plaintiff is
currently being deprived of the same benefits prescribed in the noted
laws.  The Defendants are currently applying 28 C.F.R. § 541.12 and
D.C. Code § 24-101(b) in an unequal manner.  Thus, Plaintiff is cur-
rently being denied the Equal Protection of the D.C. laws.  Impor-
tantly, this case omits any age discrimination issue, and therefore
Plaintiff does not have to overcome the rational-basis review.  See
Plaintiff's respose in opposition to the Defendants' motion to dis-
miss at pages 9 through 13.


    III.  Plaintiff Asserts A Valid Administrative Procedures
          Act Claim.


     Throughout this entire civil action, Plaintiff has maintained
that the Defendants have a statutory duty to ensure that the Plain-
tiff and similarly situated D.C. Code offenders receive "education"
and "training", which would satisfy the Congressional mandate set
forth in D.C. Code § 24-101(b).  The Defendants have conceded to
Plaintiff's assertion by stating, "[i]t is true that D.C. Code §
24-101(b) does grant the BOP authority to oversee D.C. felons and
part of this oversight includes the provision of education and
training opportunities."  See the Defendants' reply at page 4.  This
statement is in stark contrast with their argument asserted in the
May 3, 2007      memorandum in support of Defendants' motion to
dismiss at pages 7 through 8.

In addition, the Defendants now claim for the first time that "...the language in the statute does not specify any detailed education or training program...". See the Defendants' reply at pages 4 and 5   Webster's Third New International Dictionary (2002) defines the term "education" as:

> "a formal course of instruction or training offered by an institution primarily designed to provide an education—often used with a modifier specifying the type or field of instruction or training."

Id. at page 723.  The same dictionary defines the term "training" as:

> "development of a particular skill or group of skills: instruction in an art, profession, or occupation".

Id. at page 2424.


Plaintiff asserts that the foregoing definitions helps establish that the terms "education" and "training" are self-explanatory, which simply means that the Defendants are required to provide some form or forms of program opportunities to Plaintiff.  Similarly, Defendants could dubiously argue that the language in D.C. Code § 24-101(b) doesn't specify any details with respect to "subsistence"; yet the Defendants still manage to obey the statute by providing food and shelter to the inmates—all of the inmates—at RCI!  (See supra at page 2, n. 1.)  The Defendants attempt to minimize the force of D.C. Code § 24-101(b) by stating that it "merely outlines the

- 10 -

fact that training and educational opportunities are to be made
available to inmates." [Presumably, "inmates" means more than
just one.] **See** the Defendants' reply at page **4**. Plaintiff has
maintained that there are currently **no** education or training
opportunities available to him at RCI. The Defendants have yet
to refute Plaintiff's contention regarding the absence of program
opportunities at RCI. Nor have the Defendants offered this Court
any evidence that would establish that there at least **some**
program opportunities available to Plaintiff and similarly-
situated D.C. Code offenders. D.C. Code § 24-101(b) requires
the Defendants to take a certain course of action, and at this
juncture, the Defendants' **inaction** is "otherwise not in
accordance with" D.C. Code § 24-101(b). 5 U.S.C. § 706(2)(A).
Mount Royal Joint Venture v. Kempthorne, 477 F.3d 745, 753 (D.C.
Cir. 2007). **See** Title 5 U.S.C. § 702. When a statue says that
an agency **shall** do something, a defense consisting of "the
language in the statue doesn't specify details" is hardly
sufficient to justify **doing nothing**. This is the summary of
Defendants' defense of their violation of the Administrative
Procedure Act; see pages **3-4** of their reply.


       Plaintiff has been warehoused at RCI since September 12,
2002. RCI offered Plaintiff **only one single** program, which
started on December 26, 2002 and ended on August 22, 2003.


- 11 -

at Exhibit One, page 2.  Thus, the Defendants' claim that "[s]everal of these opportunities have been made available to plaintiff, as he acknowleged in his complaint," is a ridiculous misinterpretation on their part; see the Defendants' reply at page 4.  Plaintiff noted on page 14 of his complaint, to which the Defendants ostensibly re- fer, that "he has acquired a magnitude of program achievements"; all of those except one were either paid for by Plaintiff or provi- ded at institutions other than RCI.  That one program that RCI of- fered Plaintiff in 2003 does not explain away the fact that currently neither the BOP nor RCI has provided Plaintiff with program opportu- nities (note the plural!).  See chiefly, Plaintiff's complaint memo- randum at paragraphs 25  26, 27, 33, 36, and 37.

Plaintiff has a projected release date of March 5, 2011.  Plain- tiff currently has several Education Good Time ("EGT") days available to him.  See Plaintiff's complaint at paragraph 29.  However, Plain- tiff is currently unable to acquire the EGT because there are cur- rently no program opportunities available to him at this privately- operated facility.  Thus, Plaintiff is currently being deprived of the right to reduce the duration of his sentence.  The Defendants are in statutory violation of the unambiguous Congressional mandate pre- scribed in D.C. Code § 24-101(b), which requires the Defendants to provide Plaintiff with "education" and "training".  See Mount Royal Joint Venture v. Kempthorne, 477 F.3d 745, 754 (D.C. Cir. 2007); Jasperson v. Federal Bureau of Prisons, 460 F.Supp.2d 76, 88-89

- 12 -

(D.D.C. 2006); **Echostar Satellite L.L.C. v. F.C.C.,** 457 F.3d 31, 35 (D.C. Cir. 2006), citing to the two-step analysis announced by the Supreme Court in **Chevron USA Inc. v. Natural Resources Defense Council,** 467 U.S. 837, 842-43 (1984).

On page <u>5</u> of the Defendants' reply, they cited to several cases outside of the D.C. Circuit with respect to training opportunities, etc. Notably, all of those cases predate the promulgation of 28 C.F.R. § 541.12 (1998) and the enactment of D.C. Code § 24-101(b) (2001), by years or even decades. Thus, the cases cited by the Defendants' are currently failing to provide Plaintiff with education and training opportunities, which is a statutory violation of D.C. Code § 24-101(b) (2001). <u>See</u> <u>Leis</u> <u>v.</u> <u>Flynt,</u> 439 U.S. 438, 442 (1979) (A" claim of entitlement..., to be enforceable, must be derived from statue or legal rule or through a mutually explicit understanding"). <u>See</u> <u>also</u>, Plaintiff's response in opposition to the Defendants' motion to dismiss at pages <u>13</u> and <u>18</u>.

## CONCLUSION

Wherefore, Plaintiff, Gerald L. Marshall, II., <u>**pro**</u> <u>**se**</u>, prays that this Court will, in the best interest of fairness and justice, deny the Defendants' motion to dismiss and their reply in support of

- 13 -

motion to dismiss, and grant the injunctive and declaratory relief that Plaintiff is seeking.

Respectfully Submitted,

Date: June 12, 2007          /s/ *Gerald L. Marshall II*

Gerald L. Marshall, II
Fed. Reg. No. #08573-007
Rivers Correctional Inst.
P.O. Box 630 / Unit C-4
Winton, N.C. 27986-0630

## CERTIFICATE OF SERVICE

This is to certify that I have on this 12th day of June 2007 served a copy of the foregoing upon the below-listed party by placing the same in the Rivers Correctional Institution prison mailbox, addressed as follows:

Quan K. Luong
Assistant United States Attorney
555 Fourth Street N.W.
Washington, D.C. 20530

/s/ *Gerald L. Marshall II*
Gerald. L. Marshall, II
Pro se

- 14 -

Rivers Correctional Institution

Date:        December 5, 2006

To:

This is in response to your inmate request to staff dated November 28, 2006 in which you ask for the types of accreditation programs provided by RCI and who has certified the programs.

Currently RCI has one accredited program and that is the HVAC program. The Roanoke Chowan Community College has certified the program.

Should you have any further questions regarding this issue, please address them to your Unit Team.

12-6-06
Date

_____
David Farmer, AWP

**ATTACHMENT**
**ONE**