UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GERALD L. MARSHALL,<br><br>           Plaintiff,<br><br>           v.<br><br>FEDERAL BUREAU OF PRISONS *et al.*,<br><br>           Defendants. | Civil Action 06-2136 (HHK) |

**MEMORANDUM OPINION**

Plaintiff Gerald L. Marshall, proceeding *pro se*, is a District of Columbia prisoner incarcerated at the United States Bureau of Prisons' Rivers Correctional Institution ("RCI") in Winton, North Carolina.[1] He seeks to compel the Bureau of Prisons ("BOP") "to provide [him] with the same marketable vocational opportunities . . . [it provides] to similarly situated District of Columbia offenders housed in [] federal facilities." Plaintiff's Memorandum of Law in Support of His Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 ("Pl.'s Mem.") [# 1] 2. Marshall also seeks a declaratory judgment "defining [his statutory and regulatory] rights." *Id*. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12 (b)(1) and (b)(6). Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that defendants' motion must be granted because Marshall fails to state a claim upon which relief can be can be granted.[2]

---

[1] According to BOP's website, http://www.bop.gov, RCI is operated by a privately owned corrections contractor.

[2] Defendants have not articulated a basis to dismiss the case for lack of subject-matter jurisdiction, and the court discerns no such basis. As will become apparent, the court is satisfied that it has subject-matter jurisdiction under the federal question provision of 28 U.S.C. § 1331.

# I. BACKGROUND

Marshall sues BOP and certain BOP employees in their official and individual capacities. The individual defendants are Director Harley Lappin, Contracting Officer Scott P. Stermer, National Inmate Appeals Administrator Harrell Watts and "Secure Institution Manager" Thomas R. Christensen, whom Marshall also identifies as the "On-site BOP" representative. Compl. Form iv. Marshall alleges that on March 29, 2006, he requested to participate in the Air Conditioning, Heating & Refrigeration Technology vocational program ("HVAC") at RCI but was denied participation at no charge because he did not meet the program's age restriction of 18 to 25 years. Pl.'s Mem. 8-9, Exs. C-G. Marshall was advised that he could attend the course if spaces were available for non-qualifying participants but for a fee, "which may include out-of-state tuition and books."[3] Pl.'s Ex. G. Marshall claims that because the HVAC program is one of two left available to him,[4] BOP is depriving him of due process, Pl.'s Mem. ¶ 10, and equal protection of the laws, *id.*, ¶ 15, in violation of 42 U.S.C. § 1983 and D.C. Code § 24-101.[5] He seeks to be transferred to a facility that will permit him to "further [his] educational and vocational programs without cost [or residency] restrictions." Pl.'s Mem. 15.

---

[3] Marshall alleges that such costs would exceed $3,000. Pl.'s Mem. ¶ 27.

[4] He also sought to participate in the Custodial Maintenance program but could not because that program is inactive. Pl.'s Mem. ¶ 28.

[5] Marshall also seeks review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, *see* Pl.'s Mem. 7-8, but the APA does "not apply to the making of any determination, decision, or order under [the] subchapter" governing imprisonment. 18 U.S.C. § 3625. The court therefore lacks subject-matter jurisdiction over Marshall's APA claim. *See Tanner v. Fed. Bureau of Prisons,* 433 F. Supp. 2d 117, 122 n.5 (D.D.C. 2006).

## II. ANALYSIS

**A.    Marshall Fails to State a Claim Against the Individual Defendants**

By its terms, § 1983 does not apply to federal officials acting under federal law. *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). "A *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983," however. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (*citing Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). The court therefore considers Marshall's claim against the individual defendants to be brought under *Bivens*.

*Bivens* "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *see Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("Both *Bivens* and § 1983 allow a plaintiff to seek money damages from government officials who have violated [constitutional] rights."); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("*Bivens* actions are for damages," the payment of which a losing defendant is personally responsible). Under *Bivens*, "it is damages or nothing." *Davis v. Passman*, 442 U.S. 228, 245 (1979) (citation and internal quotation marks omitted). Marshall does not seek to recover money damages. He therefore has failed to state a claim against the individual defendants for which relief may be granted.

**B.    Marshall Fails to State Constitutional Claims Against the United States**

Marshall's remaining claims against the individual defendant in their official capacity operate as claims against the United States. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (an official-capacity lawsuit is in effect against the sovereign); *accord Mason v. Judges of U.S. Ct. of App. for the D.C. Circuit*, 952 F.2d 423, 425 (D.C. Cir. 1991)*, cert. denied*, 508 U.S. 829

(1992). Marshall claims that he was deprived of his right to due process of law and equal protection of the law.

    *1.*    ***The Due Process Claim***

The due process clause is implicated when the government deprives an individual of life, property or liberty. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). In identifying a liberty interest, courts may look to the Constitution or statutory law. *Ellis v. District of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996). In a prison setting, however, liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force [*e.g.*, a transfer to a mental hospital or the involuntary administering of psychotropic drugs,] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995) (citations omitted); *accord Franklin v. District of Columbia,* 163 F.3d 625, 631 (D.C. Cir. 1998). Thus, prisoners do not have a due process right to participate in vocational and educational programs, let alone one of their choosing. *Women Prisoners of District of Columbia Dept. of Corr. v. District of Columbia*, 93 F.3d 910, 927 (D.C. Cir. 1996) (*citing Inmates of Occoquan v. Barry*, 844 F.2d 828, 836 (D.C. Cir. 1988) (inmates do not have a constitutional right to work and educational opportunities)); *accord Tanner v. Fed. Bureau of Prisons,* 433 F. Supp. 2d 117, 122-23 (D.D.C. 2006) (*citing Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000)) (other citations omitted).

The fact that Marshall has completed all other programs and, thus, is currently unable to earn educational credit, Pl.'s Mem. 13, does not trigger due process considerations because the availability of a program would only provide the opportunity for Marshall to earn educational credit. Thus, a liberty interest is not at stake "because it is not inevitable that [the plaintiff] would complete an educational program and earn benefits derived from the program." *Tanner,* 433 F.

Supp.2d at 123 (quoting *Zimmerman*, 226 F.3d at 572) (other citation omitted) (brackets in original). Moreover, the unavailability of a program at a particular prison is not an atypical deprivation but rather "merely leaves the prisoner with the normal attributes of confinement." *Id.* (internal quotation marks omitted).

In the absence of a demonstrated liberty interest, Marshall's due process claim fails.

### 2. The Equal Protection Claim

In order to make an equal protection claim, a plaintiff must either allege that the government intentionally discriminated against him as a member of a protected class, *see Personnel Adm'r v. Feeny*, 442 U.S. 256 (1979), or treated him differently than another similarly situated individual or group. *Women Prisoners*, 93 F.3d at 924; *Dumaguin v. Sec'y of Health and Human Serv.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994), *cert. denied*, 515 U.S. 827 (1995).

Marshall is a 39-year-old resident of Maryland. Pl.'s Response in Opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint [#16] 10. He was denied participation in HVAC program because the program is limited to District of Columbia residents between the ages of 18 and 25. *Id.*; *see* Reply in Support of Motion to Dismiss ("Def.'s Reply") [#17] Ex. 1 (Contract Overview). Marshall claims that his exclusion from the program on these bases violates the equal protection clause.

The asserted classifications of age and residency do not fall within the suspect class category protected by the Constitution. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) ("age is not a suspect classification under the Equal Protection Clause") (citations omitted); *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("The Court has thus far reserved most stringent judicial scrutiny for classifications based on race or national origin.") (examining gender classification). Thus, "[t]here is no right under the equal protection clause . . . to be free from age discrimination . . . so long as such discrimination is rationally related to furthering a

5

legitimate state interest." *Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 473 (1st Cir. 1990); *see Hutchins v. District of Columbia*, 188 F.3d 531, 563 (D.C. Cir. 1999) (under equal protection analysis "strict scrutiny applies to burdens on fundamental rights, while rational basis scrutiny applies to burdens on rights that do not qualify as fundamental"); *American Federation of Government Employees (AFL-CIO) v. United States,* 195 F. Supp. 2d 4, 11-12 (D.D.C. 2002) (examining the three levels of scrutiny–strict, heightened and rational).

Under the rational basis analysis applicable to age classifications, *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991), the court's inquiry ends upon a showing that the challenged action is rationally based on satisfying a legitimate governmental objective. *American Federation of Government Employees (AFL-CIO),* 195 F. Supp. 2d at 12. The HVAC program is a grant-funded program specifically intended "to provide post-secondary education to young District of Columbia inmates." Def.'s Reply, Ex. 1.[6] As grantee of the funds administered by the United States Department of Education, the District of Columbia has contracted with the Board of Trustees of Roanoke Chowan Community College to "offer post-secondary educational opportunities for selected District of Columbia inmates at Rivers Correctional Institution" between the ages of 18 and 25 years. *Id*. at 2. Because BOP is not a party to the contract, it is unclear whether the United States is the proper party to defend against this equal protection claim. This is of little consequence here, however, because the HVAC program's focus on the training of District of

---

[6] The court "may consider facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice . . . without converting the motion to dismiss into one for summary judgment." *Baker v. Henderson,* 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (*citing Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979)) (other citation omitted). The Court's consideration of this document does not require conversion because the purported contract, the authenticity of which Marshall does not dispute, is referenced prominently in the complaint attachments as the basis for the underlying administrative decisions at issue. *See* Pl.'s Mem., Exs. C-G, M.

Columbia youth offenders to prepare them for reentry into society is a laudable goal, thereby satisfying the rational basis test.

In addition, Marshall is not similarly situated to the HVAC program's intended population. Thus the premise of his equal protection claim, that he is similarly situated to District of Columbia prisoners housed in other BOP facilities, Pl.'s Mem. ¶¶ 11-12, 15, is wrong. *See Koyce v. U.S. Bd. of Parole*, 306 F.2d 759, 762 (D.C. Cir. 1962) ("In determining whether [a prisoner] is being denied equal protection of the laws the class to which he belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject.").

For the foregoing reasons, Marshall fails to state a claim under the equal protection clause.

**C.      Marshall Fails to State a Statutory Claim**

Pursuant to its custodial obligations under 18 U.S.C. §§ 3621 *et seq*., BOP promulgated eleven inmate rights and eleven inmate responsibilities, *see* 28 C.F.R. § 541.12, that apply to Marshall. *See* D.C. Code § 24-101 (D.C. felons "shall be designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons [and] shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States. . . .").

Marshall asserts that it is "undisputed" that the HVAC program is the only accredited program currently offered at RCI. Plaintiff's Sur-Reply to the Defendants' Reply in Support of Motion to Dismiss [# 19] 5 (citing Att. 1). Thus, he contends that his exclusion from that program violates paragraph 10 of the regulation, which provides inmates "the right to participate in education, vocational training and employment *as far as resources are available*, and in keeping with your interests, needs, and abilities." 28 C.F.R. § 541.12 (10) (emphasis added). Because the resources for the HVAC program are limited to the terms of the aforementioned

7

contract and presumably no resources are available for the inactive Custodial Maintenance program, Marshall has presented no facts to sustain his claim of a statutory violation.[7]

### III. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss. A separate Order accompanies this Memorandum Opinion.


Date: October 30, 2007

Henry H. Kennedy, Jr.
United States District Judge

---

[7] Recently in a related case, *Forrester v. Federal Bureau of Prisons*, Civ. Action No. 06-1954, this court directed the defendants to supplement the record because they had not addressed the plaintiff's statutory claim based on the unavailability of any programs for him at RCI. Unlike here, where Marshall has proffered information about resources, the record in *Forrester* contained nothing to indicate the lack of resources as the source of the problem. *See id.*, Memorandum Opinion (Sept. 12, 2007) 7 ("In the absence of any contradicting evidence, particularly with regard to program resources, the Court may not conclude on this record that plaintiff cannot establish "any set of facts consistent with the allegations in the complaint" regarding this statutory violation.").